(No. 29504.—
THEODORE SAULS *et al.,* Appellants, *vs.* BRICEM COX *et al.,* Appellees.

*Opinion filed May 21, 1946.*

Don Scott, of Harrisburg, and Conger & Elliott, of Carmi, for appellants.

C. K. Roedel, and Bartley & Karber, (Joseph L. Bartley, guardian *ad litem*,) all of Shawneetown, for appellees.

Mr. Justice Murphy delivered the opinion of the court:

This is an ejectment action which comes to this court by direct appeal from the circuit court of Gallatin county. It involves a freehold interest in forty acres of land located

in that county. Defendants' motions to dismiss plaintiffs' second amended complaint were sustained. This appeal followed.

The sole question is as to the estate conveyed by a deed which was made in 1872 by Bricem Cox and wife to Nancy M. Cox. The chain of title under which defendants claim is not shown but it is conceded that if the deed is construed as defendants contend, and as the trial court held, plaintiffs' action fails for they would have no interest in the premises. Holders of certain oil and gas rights were parties but their interests are not involved.

The granting clause of the deed is as follows: "That the said party of the first part * * * have granted bargained sold remised released aliened and confirmed and by these presence do grant bargain sell remise release alien and confirm unto the said party of the second part to her and her bodily heirs and assigns forever all of the following described premises" etc. The deed contained no habendum clause and the covenants of warranty were limited to whatever estate was conveyed.

When the deed was made, Nancy M. Cox, the grantee, was seven years old. Thereafter she married Gora W. Sauls and nine children were born to them. She died in May, 1944, leaving the nine children surviving. They are her bodily heirs and all of them join as plaintiffs in this action. They contend that the deed created an estate tail as at common law, which section 6 of the Conveyance Act (Ill. Rev. Stat. 1945, chap. 30, par. 5) converted into a life estate in Nancy M. Cox with remainder to her bodily heirs. Defendants contend that the words "and her bodily heirs and assigns forever" should be construed as words of purchase, descriptive of the persons who take and that the deed conveyed a fee-simple estate to Nancy M. Cox and her bodily heirs, and since Nancy M. Cox was the only grantee in being when the deed was delivered, she took a full fee-simple estate.

Section 6 of the Conveyance Act abolished fee-tail estates as they were known at common law, but the application of the statute is dependent upon the estate conveyed being an estate tail at common law. If it was not a fee tail, the statute does not apply. (*Duffield* v. *Duffield,* 268 Ill. 29.) Thus at this time, as was said by Sir Edward Coke, the law from which estates tail come may seem ancient, yet it is necessary to be known.

At the common law, before the Statute De Donis, there were two estates of inheritance, the one a fee simple absolute which descended to heirs generally, the other a conditional fee which was restricted in descent to some particular heirs, exclusive of others, such as to the heirs of the grantee's or donee's body, or to a class of his lineal heirs such as the heirs male of his body. In 4 Kent's Commentaries, it is said that the conditional fee was construed to be a fee simple, on condition that the grantee had the heirs prescribed. If the grantee died without such issue, the lands reverted to the grantor. But if he had the specified issue, the condition upon which the fee was to be granted was supposed to be performed and the estate became absolute at least to the extent that the grantee could alien the land, and thus bar not only his own issue of their right to take as his bodily heirs but to cut off the grantor's possibility of reverter. It is said in Blackstone's Com., Book 2, page 110, that the result was that grantees who held conditional fees aliened their estates just as soon as there were heirs of the body which, upon death, would come within the condition prescribed, and the grantee repurchased the land, thereby becoming vested with a fee simple absolute that would descend to his heirs generally.

Conditional fees and the means of defeating them being recognized by law, the Statute De Donis was adopted. The preamble of the act evidences the purpose for which it was adopted, for therein reference is made to the custom that prevailed whereby grantees seized of conditional fees con-

veyed the same when issue was born, which the act says "disinherits their issue of the land contrary to the mind of the giver." It commanded that henceforth the will of the donor as expressed in the deed should be observed and they to whom conditional fees were given should have no power to alien the land, but that it should remain unto the issue of them to whom it was given after their death or if issue failed it should revert unto the donor. The operation of the statute on conditional fees created what the courts termed estates tail. It is estates of this character to which section 6 was directed. Its purpose was to abolish estates tail so that the grantee would take a life estate and the remainder would go to the heirs of the body of the grantee or, if to a class of such heirs, then to them. *Nave* v. *Bailey,* 329 Ill. 235; *Lehndorf* v. *Cope,* 122 Ill. 317; *Frazer* v. *Board of Supervisors,* 74 Ill. 282.

What was the nature and quantity of the estate conveyed by the deed in question, determined by the rules of the common law? It is a question of law to be ascertained by construction of the language used in the deed. The true purpose in construing a deed is to ascertain the intent of the grantor and to give effect to such intent if not in conflict with some rule of law. If, in describing the estate conveyed, the grantor has used words which in the law of real property have come to have a definite legal significance, then such words must be given their legal effect. This is based on the principle that it is presumed the grantor intended that the words so employed should be given their full import. (*Dry* v. *Adams,* 367 Ill. 400; *Coogan* v. *Jones,* 278 Ill. 279; *Duffield* v. *Duffield,* 268 Ill. 29.) Some of the cases cited by counsel in this case prompt a restatement of the principle that the license permitted in the construction of wills is not allowed when construing a deed. *Duffield* v. *Duffield,* 293 Ill. 300; *Mittel* v. *Karl,* 133 Ill. 65.) Failure to observe this distinction leads to confusion.

There is nothing in this deed which indicates that the grantors intended to convey an estate different from that which the words, "to her and her bodily heirs and assigns forever," would convey according to their legal significance. The innumerable cases where these words and others of similar import have been construed demonstrate that they long since have had a technical legal meaning. The legal effect of some of them has its origin in the common law and that is the source from which this question must be determined.

To create an estate of inheritance at common law, it was necessary that the grant or donation contain the word "heirs." In Blackstone's Com., Book 2, page 108, the necessity of using the word "heirs" to create an estate of inheritance was emphasized by the illustration that if land be given to a man forever or to him and his assigns forever, this vests in him but a life estate. The necessity of the word "heirs" to create an estate of inheritance applied to both estates in fee simple absolute and estates tail. In *Aetna Life Ins. Co.* v. *Hoppin,* 249 Ill. 406, it was said: "The word 'heirs' is a technical word having a definite legal signification, and, when unexplained and uncontrolled by the context, must be interpreted, according to its technical import, as designating the person appointed by law to succeed to the real estate in case of intestacy. Heirs of the body are a limited class of heirs, restricted to lineal descendants."

In this case the word "heirs" must be interpreted to have created an estate of inheritance and the words "her bodily heirs" without more, created an estate of inheritance restricted to lineal descendants. In *Coogan* v. *Jones,* 278 Ill. 279, we construed a deed, the words of the granting clause being similar to those used in the deed in the instant case. It was observed that the words often employed in the granting clause of a deed conveying a fee tail are such as "and the heirs of his body begotten" or to him and the

"heirs of his body." It was said: "There is no difference in the effect of a deed, between a grant to one 'and the heirs of his body begotten' and to one and 'his bodily heirs.' "

The word "heirs" being present in the granting clause of the deed in question made it an estate of inheritance and the words "her bodily heirs" restricted it to the lineal descendants of Nancy M. Cox. This interpretation is supported by the following cases where the words quoted from each respective case were held to convey an estate tail: In *Butler* v. *Huestis*, 68 Ill. 594, "the heirs of her body;" *Frazer* v. *Board of Supervisors*, 74 Ill. 282, "her heirs of her body;" *Lehndorf* v. *Cope*, 122 Ill. 317, "her heirs of her body;" *Welliver* v. *Jones*, 166 Ill. 80, "her heirs by me;" *Kyner* v. *Boll*, 182 Ill. 171, "her bodily heirs and assigns forever;" *Moore* v. *Reddel*, 259 Ill. 36, "the heirs of the body;" *Metzen* v. *Schopp*, 202 Ill. 275, "his heirs of his body."

To avoid the interpretation given to the words "to her and her bodily heirs" defendants contend such words should be construed as words of purchase. In support of such contention defendants stress a meaning which should be given to the superadded words "and their assigns forever," which they say evidences an intent that Nancy M. Cox and her lineal descendants should take the fee simple concurrently. This ignores the legal significance of the word "heirs" as it was interpreted at common law. As pointed out, the rule was that the use of such word in the granting clause indicated an estate of inheritance had been conveyed. A fundamental principle was that a living person had no heirs either generally or of the body and consequently a conveyance of a present estate to a living person and his heirs generally or the heirs of his body was, as to the heirs, void for uncertainty. *Aetna Life Ins. Co.* v. *Hoppin*, 249 Ill. 406.

Defendants recognize the force of the foregoing principle and seek to avoid its application by having the word "heirs" interpreted to mean "children." It is true the word "children" is usually construed as a word of purchase, that is, as descriptive of the persons who are to take. In construing deeds to ascertain the nature and quality of the estate conveyed, the court does not have the license to displace a word of technical meaning and substitute in its place a word of different meaning unless it appears from the context of the instrument that the grantor intended to use the substituted word in place of the one employed. As stated, there is nothing in the deed which indicates the grantors intended to use the word "children" instead of the word "heirs."

Defendants argue that *Albers* v. *Donovan,* 371 Ill. 458, is authority for construing the word "heirs" to mean "children." The granting words in the *Donovan case* were "to Jennie Donovan and the heirs born of her body in fee simple." It will be observed that in the *Donovan case* there were references in other parts of the instrument that referred to "children" which the court concluded was sufficient to indicate an intention of the grantor to convey to "children" of Jennie Donovan instead of to the heirs born of her body. It is not necessary in this case to discuss the sufficiency or insufficiency of the evidence in the deed to sustain the conclusion reached, for here no reference is made in the deed to "children."

Defendants argue that the effect given to the words "in fee simple" in the *Donovan case* applies with equal force to the words "and their assigns forever" in this case. It makes no difference in this case whether "their assigns" be considered as referring to the assigns of Nancy M. Cox and her bodily heirs collectively or to the assigns of the "bodily heirs" only, for the result is the same. The word "assigns" or, as generally used, "assignees" is a word that is frequently used and is usually construed as compre-

hending all those who take either immediately or remotely from an assignor whether by conveyance, devise, descent or act of law. (*Hoffield* v. *United States,* 186 U. S. 273, 46 L. ed 1160.) In *Ball* v. *Chadwick,* 46 Ill. 28, this court quoted a definition of assigns given by Bouvier, as follows: "Those to whom rights have been transmitted by particular title, such as sale, gift, legacy, transfer or cession." It is obvious that the words "assigns" was not intended as creating another class of takers but was to include those who came to the property by transfer or other means from Nancy M. Cox and her bodily heirs. Can it be said that the super-added words "and their assigns forever" denote an intention to convey an estate greater than the one conveyed by the words that preceded, *viz:* "to her and her bodily heirs." The force given the word "heirs" in a conveyance to create an estate of inheritance at common law is shown by the illustration in Blackstone previously mentioned. It is said there that a conveyance to a man forever or to him and his assigns forever vested only a life estate. So that at common law, the employment of the words "forever" or "to his assigns forever" did not convey an estate of inheritance. So in this case they cannot be interpreted as evidencing an intent to have the preceding words construed as conveying an estate greater than an estate tail. The word "assigns" as used in the deed is not a word of conveyance nor does it contain the thought that it was used in the sense of cutting off the restricted line of descent included in the preceding words. It is conceivable that a person holding an entailed estate would have an interest that would be subject to lease or some other forms of assignment, for to make an interest the subject of transfer to assigns it is not necessary that it be a fee-simple interest. This construction is supported by *Weart* v. *Cruser,* 49 N. J. L. 475, 13 Atl. 36; *Chrystie* v. *Phyfe,* 19 N. Y. 352.

The deed conveyed an estate tail at common law, which section 6 of the Conveyance Act transforms into a life

estate in Nancy M. Cox with remainder to her bodily heirs. In *Aetna Life Ins. Co.* v. *Hoppin,* 249 Ill. 406, it was said: "Future estates, unlike present interests, may be limited to persons who are not ascertained or who are not even in existence, provided there is a present particular estate to sustain the remainder and the grantee shall be in existence when the time arrives for the enjoyment of the estate. Such an estate is a contingent remainder, and such is the estate limited by the deed now under consideration. A conveyance for life with remainder to the heir or heirs of the body of a living person creates a contingent remainder."

It would extend this opinion to an unreasonable length if we undertake to discuss and analyze the many cases that have been cited. It is sufficient to say that many of the cases referred to were will-construction cases and in others an estate had been conveyed which expressly created a life estate in the first taker with remainder to the heirs of the body of the life tenant. It will appear from what has been said, that such cases are entirely different from the instant case.

For the reasons assigned, the judgment of the circuit court is reversed and the cause remanded, with directions to proceed in accordance with the views expressed.

*Reversed and remanded, with directions.*