(No. 19445.—

SUSAN G. FAY *et al.* Appellants, *vs.* ANDREW F. FAY *et al.*
Appellees.

*Opinion filed October 19, 1929.*

F. T. CARSON, and W. A. NICHOLS, for appellants.

FORREST B. GORE, for appellees.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Andrew F. Fay, a resident of the city of Urbana, in Champaign county, died testate on November 22, 1925. He left him surviving Susan G. Fay, his widow, and Donald A. Fay and Douglas R. Fay, his sons. Douglas R. Fay has two children, Andrew F. Fay, the Second, and Douglas R. Fay, Jr., both of whom are infants. The sons and grandsons named are the testator's only descendants. His will was admitted to record by the county court of Champaign county. The second section of the will reads as follows: "2. I give, devise and bequeath to my wife, Susan G. Fay, all my property both real and personal, to have and to hold, and enjoy the use thereof, for and during her natural life, or as long as she remains my widow, and after her death, or her re-marriage, the same to be equally divided amongst my children, or to the heirs of any who may have died, such heirs to receive only the deceased child's portion."

Susan G. Fay, the widow, filed a bill in the circuit court of Champaign county for the construction of the foregoing section. She alleged that at the time of his death the testator owned a parcel of land at the corner of Green street and Goodwin avenue, in the city of Urbana, near the campus of the University of Illinois; that the land was improved by an old dwelling house and the premises had been occupied by the testator and the complainant as a homestead; that the house was in a bad state of repair, of small value and could not be rented for residential purposes; that the land upon which the house stood was worth approximately $60,000; that even if substantial improve-

ments were made upon the house, the property would not yield a reasonable return upon its value, and that changes in the neighborhood gradually depreciated the value of the property in question and if it should be held indefinitely substantial loss to the testator's estate would result. The complainant further alleged that there was a present opportunity to sell the property at a price approximating its value provided a good title could be conveyed, but that questions concerning the construction of the second section of the will prevented the sale; that the true meaning of that section was to vest the title to the testator's estate in his children at the time of his death subject to her estate for life or during widowhood, and that, if such construction should not be adopted, then a trustee should be appointed by the court to sell the property and to hold the proceeds in trust for the purposes designated in the will. The two sons and the two grandchildren were made defendants to the bill. Two answers were filed, one by the sons and the other by a guardian *ad litem* in behalf of the grandchildren. The cause was referred to a master in chancery. The evidence established the facts alleged in the bill. In accordance with the master's recommendation, a decree was rendered by which the second section of the will was construed to vest the title to the real and personal property in the complainant during her life or as long as she remained unmarried, and, subject to the widow's interest, in the two sons of the testator in equal shares in fee simple upon their respectively surviving the death or re-marriage of the widow, but that each undivided interest in remainder was subject to divestiture by the holder's death prior to the death or re-marriage of the widow, in which event the interest that otherwise would have gone to such deceased son would be vested in his heirs. The decree further provided that, since it could not be determined until the widow's death or re-marriage who would have the ultimate beneficial inter-

est in the estate, it was necessary that the corpus should be held intact until such death or re-marriage; that to prevent waste the real estate should be sold and converted into money for re-investment by a trustee who should act under the advice and approval of the court; that the corpus of the estate should be held in trust by such trustee for the use and benefit of the widow until her death or re-marriage; that upon the happening of either of these events, the trust should terminate, and the corpus, together with the accumulated net income not theretofore paid to the widow should be distributed equally between the two sons but that if either son should not then be living, the share which otherwise would have been payable to him should be distributed among his heirs *per stirpes* and not *per capita*. Douglas R. Fay was appointed trustee to carry the decree into effect. From that decree the widow and the two sons prosecute this appeal.

Appellants contend that the testator, by his will, bequeathed and devised his estate absolutely and in fee simple to his widow and two sons, with no interest, contingent or otherwise, in any other person; and that the widow and the sons have the power, by an appropriate deed of conveyance, to vest in the purchaser a merchantable title to the real estate in question without requiring the appointment of a trustee. They further contend that if it be held that the will created a base or determinable fee in remainder in the two sons, the circuit court properly exercised the power to appoint a trustee for the purpose of making a sale of the real property. Cross-errors are assigned by the grandchildren, who are the appellees. They contend that a base or determinable fee only vested in the sons of the testator, subject to divestiture by an executory devise over to the descendants of each son in the event of his death prior to the death of the life tenant, and hence that they, the appellees, have an interest in the estate which is certain and indestructible; that the circuit court lacked

jurisdiction to appoint a trustee to sell the real estate and to sequester the proceeds, and that the court erred in decreeing a sale of the real estate prior to the termination of the estate of the widow by her death or re-marriage.

The paramount rule in the construction of wills is to ascertain the intention of the testator as expressed in his will and to give it effect unless he has attempted to dispose of his property contrary to some rule of law or public policy. (*Brill* v. *Green,* 316 Ill. 583; *Pereboom* v. *Cloyd,* 317 id. 85; *Wells* v. *Dalies,* 318 id. 301; *McCormick* v. *Sanford,* 318 id. 544; *Beall* v. *Beall,* 331 id. 28; *Liesman* v. *Liesman,* 331 id. 287). By the second section of his will, the testator gave the use of all his real and personal property to his widow for life or, in the event of her re-marriage, then only during her widowhood. He further directed that, after her death or re-marriage, his estate should be equally divided among his children, "or to the heirs of any who may have died, such heirs to receive only the deceased child's portion." The obvious purpose of the testator was to provide for his widow and his children then living or to be born thereafter. The support of his widow was his immediate concern, yet he did not give her the whole and entire interest in, but merely the use of, the estate for the period defined, and reserved the remainder for his children. The appropriation of the estate for the widow's use necessarily postponed the enjoyment of possession by the remaindermen. Their possession of the property was deferred in order that an estate of limited duration might intervene and not for reasons personal to them. The division of the estate, not the vesting of the remainder, the testator directed, should be made after the death or re-marriage of the widow. Nothing in the second section of the will indicates that the testator intended that the vesting of the remainder should be postponed until his widow's death or re-marriage.

The law favors the vesting of estates at the earliest possible moment, and estates devised will vest in interest at the death of the testator unless some later time for their vesting is clearly expressed by the words of the will or appears by necessary implication. (*Boys* v. *Boys,* 328 Ill. 47; *Kaup* v. *Weathers,* 302 id. 569; *Dustin* v. *Brown,* 297 id. 499; *Williamson* v. *Carnes,* 284 id. 521; *Lynn* v. *Worthington,* 266 id. 414; *Reed* v. *Welborn,* 253 id. 338; *Kohtz* v. *Eldred,* 208 id. 60; *Becker* v. *Becker,* 206 id. 53; *Kellett* v. *Shepard,* 139 id. 433; *Scofield* v. *Olcott,* 120 id. 362; *Pereboom* v. *Cloyd, supra*). Although a devise arises wholly out of directions to divide in the future, yet if the division is not deferred for reasons personal to the devisee, but merely because the testator desired to appropriate the subject matter of the devise to the use and benefit of another during the life of the latter, the vesting of the devise in remainder will not be postponed but will vest at once, and the right of enjoyment only will be deferred. (*Scofield* v. *Olcott, supra; Knight* v. *Pottgieser,* 176 Ill. 368; *Pearson* v. *Hanson,* 230 id. 610; *Carter* v. *Carter,* 234 id. 507; *Thomas* v. *Thomas,* 247 id. 543; *People* v. *Allen,* 313 id. 156; *Thomas* v. *Stoakes,* 328 id. 115). The second section constituted a valid devise of the remainder to the testator's children as a class, vesting it, at the time of his death, in his two sons, subject to re-opening to admit a posthumous child, if one had been born thereafter. *Whittaker* v. *Porter,* 321 Ill. 368; *Schaefer* v. *Schaefer,* 141 id. 337.

The direction that, after the widow's death or re-marriage, the remainder shall be equally divided among the testator's children, is followed immediately by the words "or to the heirs of any who may have died." The words "or to the heirs" occur in wills when the words "and to the heirs" are intended; and where a will gives an estate to the devisee "or" his heirs, the word "or" will be construed as "and." (*Smith* v. *Dellitt,* 249 Ill. 113; *Thomas* v.

*Stoakes, supra; Boys* v. *Boys, supra*). The use of the word "heirs" in a will creates a strong presumption that it is used in its technical sense, as denoting the whole of the indefinite line of inheritable succession. The word "heirs" should not be construed as a word of purchase unless other controlling words show such an intention. (*Meeker* v. *Steepleton,* 309 Ill. 337; *Ortmayer* v. *Elcock,* 225 id. 342). The words used by the testator, on the contrary, import inheritance and show that he did not intend to break the line of descent. The ultimate devise therefore was to the testator's children, and the words "or to the heirs of any who may have died" signify that if they take, they take by descent and not as independent purchasers. Kales, Estates, Future Interests, 2d ed. secs. 170, 175.

Appellees rely upon *Corson* v. *Thornburn,* 323 Ill. 338; *Hasemeier* v. *Welke,* 309 id. 460; *McBride* v. *Clemons,* 294 id. 251; *Rasmusson* v. *Hoge,* 293 id. 101; *Blackstone* v. *Althouse,* 278 id. 481, and *Lachenmyer* v. *Gehlbach,* 266 id. 11. There were controlling words in the wills involved in these and other cases which justified the construction that the vesting in interest was postponed or that a qualified fee only was devised. In the present case there are no doubtful or contingent circumstances connected with the death of either of the testator's sons by which his share will pass to his heirs as purchasers. The death of a child leaving heirs is not a contingent or collateral event which will change the line of descent, and there is nothing in the will which prevented an estate of inheritance vesting in the remaindermen upon the death of the testator. *Boys* v. *Boys, supra.*

Appellants, Donald A. Fay and Douglas R. Fay, the children of the testator, are vested with an indefeasible estate in remainder and they, with the widow joining them, may, by an appropriate deed, convey the whole and entire interest of which the testator died seized. The appointment

of a trustee and the order directing the trustee to sell the real estate were, therefore, unwarranted, and in these respects the cross-errors are sustained.

The decree of the circuit court is reversed and the cause is remanded to that court for further proceedings in conformity with this opinion.     *Reversed and remanded.*