**UNITED STATES v. 575.52 ACRES OF LAND, MORE OR LESS, SITUATED IN CITY OF PORTSMOUTH, TOWN OF NEWINGTON, ROCKINGHAM COUNTY, N. H., et al.**

No. 1075.

United States District Court.
D. New Hampshire.
Jan. 21, 1954.

James A. Manning, Sp. Asst. to U. S. Atty., Concord, N. H., for plaintiff.

Henry M. Fuller, Portsmouth, N. H., for defendants Robert R. Smith and Pearl I. Smith.

James H. Simes, Portsmouth, N. H., for defendants Annie R. O'Donnell and Nina Dippre.

CONNOR, District Judge.

This action comes on to be heard on motion of the United States of America to determine all questions of title to Tract No. C–311 taken by the plaintiff under condemnation proceedings insti-

tuted on September 3, 1952, and the proportionate interests of the respective defendants in and to the compensation to be awarded thereunder.

The tract, containing 43.70 acres, more or less, located in the town of Newington and county of Rockingham, within this district, was formerly owned by Henry J. Downing, deceased, whose will was proved in common form in the Probate Court of said county on December 15, 1880, and therein his real estate, including said tract, was devised equally to his daughters Henrietta, Josephine, and Ruby Jane. His widow, Lydia, waiving dower and homestead, petitioned the Probate Court for one-third of the real estate in fee, and the property was divided into two parcels. One parcel of 16 acres was set off to Lydia as her statutory right in the estate, with the balance thereof remaining as the property of the devisees. Ruby Jane later conveyed her interest to Henrietta and Josephine. Henrietta died intestate in 1915, and Lydia, as her mother, acquired her undivided one-half interest. Lydia died intestate in 1920, survived by her daughters Josephine, Ruby Jane, and Lucretia P. Brown. The status of the title then was as follows: Josephine owned an undivided one-third interest in the 16 acres and an undivided two-thirds interest in the balance; Ruby Jane and Lucretia each owned an undivided one-third interest in the 16 acres and an undivided one-sixth interest in the balance. Lucretia died sometime between 1920 and 1937, and the records disclose no probate of her estate. A deed, dated June 9, 1944, purportedly signed by all of the heirs of Lucretia P. Brown, conveying to one John A. Edgerly all of the interest of Lucretia P. Brown in what appears to be Tract No. C–311, is recorded in the Rockingham County Registry of Deeds. Josephine's will was proved in common form on September 28, 1937. The fourth item of her will provides: "I give, devise and bequeath to my sister Ruby J. Allard of Newington all my right title and interest in my home place in Newington, together with all household furniture and furnishings therein, for and during the term of her natural life, and upon her decease to my nieces Nina and Annie to have and to hold to them for and during the terms of their natural life and the life of the survivor, and upon their decease thereafter in equal shares to the heirs of their bodies per capita and not per stirpes. It is my desire that my sister Ruby be provided with a home and shelter on said property during her life, and that the property shall not pass out of the family." It appeared that Ruby Jane Allard was the residuary legatee in Josephine's will. Ruby Jane died testate January 29, 1943, and John A. Edgerly was appointed executor of her will. He also was residuary legatee thereunder. Under license, Edgerly, as executor, purported to convey on December 28, 1943, an undivided half interest in Tract No. C–311 to Robert R. Smith and Pearl I. Smith. By quitclaim deed July 7, 1944, duly recorded, Edgerly conveyed all of his right, title and interest in the pertinent tract to Robert R. Smith and Pearl I. Smith.

It is agreed by all of the parties to this controversy that Robert R. Smith and Pearl I. Smith, described as persons claiming an interest in the property in question and thus codefendants, now own, by the various devises and deeds, all of the interest which Lucretia and Ruby Jane had in Tract No. C–311.

Determination of the prayer of the movant must rest on the interpretation of the fourth clause of Josephine's will above referred to. No portion of the will is before the court other than the above-described fourth item thereof contained in the motion. Though mindful of the rule that in construing a single clause the entire will should be examined, I must assume that the parties considered that its production would be of no aid to the court.

It is the contention of the defendants Smith that Josephine's will "attempted to create a remainder in fee tail in the issue" of Annie O'Donnell and Nina Dippre, and since fee tails have not been

recognized in New Hampshire since 1789, Jewell v. Warner, 35 N.H. 176, the attempted devise fails, and the remainder lapses into the residuary clause, and hence to Ruby Jane. Upon the premise that John A. Edgerly was the residuary legatee of Ruby Jane's estate, the Smiths claim title to the interest of which Josephine died possessed, subject only to a joint life estate in the testatrix' nieces, Nina and Annie, both of whom are now living.

It is the position of the defendants Annie R. O'Donnell and Nina Dippre that they have a joint life estate in the property of which Josephine died possessed, and a fee in the remainder thereof by virtue of a deed from all of their children dated April 24, 1953, which purports to convey all of their right, title and interest to their respective mothers. The grantees assert that they are entitled to the full compensation to be awarded for this interest, in that it was the intention and will of the testatrix that the children of Annie and Nina take as a class as purchasers from the testatrix, and not through their respective parents, a vested remainder which is capable of being conveyed in fee.

The claim of the Smiths is without merit. No estate tail or "remainder in fee tail" was created by the will of Josephine. To create such an estate, it is required that the heirs of the body of the tenant in tail upon his death shall take immediately upon the happening of the event, through the deceased parent, the precise estate of the latter, per stirpes. This requirement precluded the creation of an estate tail with the limitation of the estate upon the decease of the tenant in tail to his or her issue and to the issue of a stranger. To recognize such a limitation would be in violation of the purpose and intention of the law of entails to confine the inheritance to those of the immediate blood of the first taker. A short answer to the defendants Smith's contention is that nothing resembling a fee tail, as that estate was known at common law, is to be found in the clause in question. But even if it were, Jewell v. Warner, supra, is sufficient authority that not only was the statute of de donis impliedly repealed by legislative enactments but that an attempt to grant a fee tail estate would fail and create only an estate in fee simple.

Nina and Annie took a joint life estate in the real estate of Josephine. Upon the death of one, her interest will cease, and the will of Josephine clearly directs that the heirs of the body of such deceased take nothing from or through her. The expressed intention of the testatrix is that after the death of both the preceding life tenants each of the "heirs of their bodies" take "per capita" in equal shares of the testatrix' property.

Since the Rule in Shelley's Case to the effect that where, in an instrument of conveyance, a freehold estate is given to a person, and in the same instrument a remainder is limited to the heirs or the heirs of the body of that person, that person takes both the freehold estate and the remainder, has been abolished as to devises by Revised Laws of New Hampshire, Chapter 350, Section 8, it cannot affect this devise.

The words "heirs of their bodies" as used in the will are not words of limitation denoting the extent and character of the estate granted to Annie and Nina, but are words of purchase, descriptive of the persons to take upon the termination of the life estates. The use of the language "thereafter in equal shares" and "per capita and not per stirpes" lends support to this conclusion. It is clear that under certain circumstances such words as "heirs of the body" are construed as words of purchase. See Aetna Life Insurance Co. v. Hoppin, 249 Ill. 406, 94 N.E. 669; and Dukes v. Faulk, 37 S.C. 255, 16 S.E. 122, 34 Am.St.Rep. 745.

■■■ This is a devise of the remainder in fee to a class. The testatrix' legal intent as expressed in the language of the will is to be carried out, Gale v.

Gale, 85 N.H. 358, 159 A. 122, and the language of the will is to be given a literal interpretation in the absence of evidence that the testatrix used it in a different sense. McAllister v. Hayes, 76 N.H. 108, 79 A. 726. "It is a well-settled rule of construction that technical words are presumed to be used technically unless the contrary appears on the face of the instrument, and that words of a definite legal signification are to be understood as used in their definite legal sense." Aetna Life Insurance Co. v. Hoppin, supra [249 Ill. 406, 94 N.E. 671]; Wilkins v. Ordway, 59 N.H. 378, 381; Dennett v. Dennett, 40 N.H. 498, 500. Here the words "heirs of their bodies" have a definite legal signification, and since they are unexplained and uncontrolled by the context, they must be interpreted according to their technical import.

■ The defendants Dippre and O'Donnell assert that the children of Annie and Nina now in esse have a vested remainder which they can and have conveyed to their parents. This contention must be rejected. It would be an unwarranted extension of the doctrine that wherever possible a future interest will be deemed vested, not only for the purpose of classification but vested in the sense that the interest is not defeated by death during the life tenancy, Osgood v. Vivada, 94 N.H. 222, 225, 50 A. 2d 227, to construe "heirs of their bodies" as meaning "children" without any specific language supporting such a construction. The only reasonable construction of the disputed clause is that the children of the defendants Dippre and O'Donnell have taken something less than a vested remainder, and clearly are not empowered to convey a fee. As a contingent remainder to a class of unascertainable persons, 2 Tiffany Real Property, 3d Ed., §§ 320, 321, pp. 22–29, under the recent holding of Merchants National Bank v. Curtis, 98 N.H. 225, 97 A. 2d 207, the children may convey such interest as they have therein. Construed as a vested remainder, subject to being divested, they may likewise convey their interest under the authority of Kennard v. Kennard, 81 N.H. 509, 511, 129 A. 725. The end result is identical, and it is unimportant which of the classifications is accorded this interest.

■ The "heirs of their body" is a limited class to be restricted to lineal descendants. Determination of these heirs and the extent of the interest which they take is to be made only upon the death of the life tenants. "It is the practice to decline to presently deal with a suppositious situation." Gale v. Gale, supra [85 N.H. 358, 159 A. 124].

■ The conveyance from the children of Annie and Nina to the joint tenants would seem to be effective to convey whatever interests the grantors have, which interests are subject to be defeated by their predeceasing the life tenants. See 2 Powell Real Property (1950), Sec. 283, pp. 504, 505. But it would not convey to them the remainder in fee.

It is my conclusion that at the time of the taking the defendants Smith were the owners in fee of an undivided two-thirds of the 16 acres and of an undivided one-third of the balance, and are entitled to be compensated to that extent only. I further conclude that the defendants O'Donnell and Dippre own a life estate in one-third of the 16 acres and in two-thirds of the balance, and there is a remainder in fee in these portions in "the heirs of their bodies." Since the members of this class cannot now be determined, the estate must be kept in trust until such time as they can be. The life tenants are entitled to the income during their lives of the value of an undivided one-third interest in the 16 acres and an undivided two-thirds of the balance of the tract.